THE STATE *ex rel.* MISSISSIPPI COUNTY, *Appellant*, v. MOORE.

| 74 | 413 |
| 62a | 483 |
| 74 | 413 |
| 143 | 28 |
| 73a | 569 |
| 73a | 570 |
| 74 | 413 |
| 158 | 200 |
| 158 | 202 |

1. **Loss of County Funds Through Bank Failure:** TREASURER'S LIABILITY. Loss of funds of the county through failure of a bank in which they are deposited will not relieve the treasurer from liability to account for them; and this is true, although before selecting that bank as the depository, he assured himself by strict inquiry of its safety and solvency, and the lawless condition of the county made it impossible to keep the funds safely elsewhere than in a bank.

2. **"Public Enemies:"** BAILMENT. Tramps, thieves and robbers are not public enemies, within the meaning of the rule which exempts bailees from liability for a loss occasioned by the act of God or a public enemy.

3. **County Treasurer.** If a county treasurer makes a general deposit of the county's funds in a bank to his credit as treasurer, it simply becomes indebted to him in his official capacity, and he takes the risk of being able to collect the funds.

*Appeal from Mississippi Circuit Court.*—HON. D. L. HAWK-INS, Judge.

REVERSED.

*Smith & Krauthoff* for appellant.

Upon principle and considerations of public policy, a custodian of public funds can only absolve himself and his sureties from liability by showing that he disbursed the same according to law, or by producing the same. 67 Mo. 395; 3 How. 578. If defendant's liability is tested by the same rule that determines that of a common carrier, and he is relieved when the funds are lost either by the act of God or of public enemies, yet thieves and robbers cannot be regarded as public enemies. Story on Bailm., (9 Ed.) § 526; Angell on Carriers, § 200; Hutch. on Carriers, §§ 204, 205; *Coggs v. Bernard*, 2 L'd Raym. 909, 918; *Porcher v. R. R. Co.*, 14 Rich. L. (S. C.) 181, 184. Whether or not a stated power is to be considered a public enemy, is a question of law, and unless the facts alleged show that it is such an enemy, the general charge to that effect will not make it so. *Dritt v. Snodgrass*, 66 Mo. 286, 296; *Cook v. Putnam Co.*, 70 Mo. 668, 670. Courts will take judicial notice of the fact that the United States are not now at war with any other power, and that there are not within the limits of this State any public enemies within the legal meaning of the term. 1 Greenl. Ev., §§ 5, 6; 1 Whart. Ev., §§ 317, 338; *McKenzie v. Hill*, 51 Mo. 307; *Douthitt v. Stinson*, 63 Mo. 268, 274, *U. S. v. Bales of Cotton*, 10 Int. Rev. Rec. 52.

*Glover & Shepley* and *Virgil M. Harris* for respondents.

The answer was admitted to be true, and being true, was a defense to the action. We admit that when a party has made an express contract to do a particular thing which is lawful and possible, he is held to a literal perform-

ance, " unless performance is made impossible by the act
of God or public enemies." Bishop Cont., § 619. We
rely on this principle to sustain the judgment. It pro-
ceeds upon the idea that a man can contract for nothing
more than all that good faith and human strength can ac-
complish. When these fail from the act of God or public
enemies, the contract is dissolved. *State v. Townshend*, 44
Mo. 356; *U. S. v. Thomas*, 15 Wall. 337; *Supervisors v.
Dorr*, 25 Wend. 440.

The statute law required the treasurer to keep his office
at the county seat, and the legal inference is, that the mon-
eys of the county are to be kept there ; also it is admitted
by the record that it was impossible, from the overpower-
ing force of public enemies, to perform this part of the
contract. By this fact the contract which bound the treas-
urer to keep the money at the county seat, was dissolved.
His duty afterward was that of bailee and trustee of the
funds, and as such he was liable only for neglect of ordi-
nary care and diligence. The case of *State v. Powell*, 67
Mo. 395, is not like this, and is no authority for such a
case as this. This money was lost by public enemies. If
J. S. Moore had kept it at the county seat, it would have
been delivering the money into the hands of public ene-
mies. It is agreed in the record, it was impossible so to
keep it.

NORTON, J.—The State, on relation of Mississippi
county, sued James S. Moore and Joseph C. Moore on a
bond given by James S. Moore, as treasurer of said county,
November 9th, 1878, in the penalty of $20,000. The bond
was conditioned that James S. Moore should perform all
the duties of said office. The petition alleged that the law
required the treasurer, at the expiration of his term of
office, to pay over to his successor all moneys in his cus-
tody, as treasurer, belonging to the plaintiff; and that said
Moore received as treasurer, $2,996.90 during his term of
office, belonging to plaintiff, and has failed and refuses to

pay over to his successor said $2,996.90, and prayed judgment for said sum.

The defendants answered that at the time said moneys came to the possession of the treasurer, Mississippi county was not, nor for a long time thereafter, a safe place to keep such large sums of money; that it was then, and has been since, overrun with thieves and tramps, and overpowering public enemies, and the dwelling houses, and other buildings there were unfit and unsafe for keeping money; that the county court made no provision for an iron safe, with locks or other means of safe custody of county funds; that ordinary prudence required the treasurer to deposit said money in a safer place than could be found in said county; that no business man was willing to keep, or did keep, any large sum of money in said county; that in this emergency, the treasurer, after strict inquiry as to the safety and solvency and faithful management of the " North St. Louis Savings Association," a bank in the city of St. Louis, deposited the money claimed in this suit in said bank—in which bank the said James S. Moore deposited his own funds, and the wealthiest and most prudent merchants deposited their funds—making said deposit in the name of James S. Moore, treasurer of Mississippi county; that said deposit was made with the knowledge and assent of, and without objection by, the Mississippi county court; that while said money remained in said bank it failed, and said money was lost after the utmost care of the treasurer, and by unavoidable misfortune. To this answer a replication was filed, putting in issue the facts alleged, but on the trial it was agreed that all the facts of and concerning the controversy were fully and correctly set out in the petition and answer. The court rendered judgment for defendants, and plaintiff brings the case here by appeal.

The condition of the bond sued upon was that defendant, as county treasurer, " shall faithfully perform all the

1. LOSS OF COUNTY FUNDS THROUGH BANK FAILURE: treasurer's liability. duties of his said office." These duties are prescribed by law, and are as follows: "To receive all moneys payable into the treasury of the county, and disburse the same on warrants drawn by order of the county court; to keep a just account of all moneys received and disbursed; to deliver over to his successor in office all things pertaining thereto, together with all moneys belonging to the county." When, therefore, the defendant. as treasurer of the county, bound himself to perform, faithfully, "all the duties of his said office," he assumed, among others, an obligation to deliver to his successor in office, " all things pertaining thereto, together with all moneys belonging to the county," as much so as if it had been specifically incorporated in the bond.

In this suit defendant is sought to be made liable for non-compliance with his agreement to deliver, or pay over to his successor in office, the sum of $2,996.90, money belonging to the county. The defendant and treasurer answers that he ought not to be held to his obligation, because, in consequence of Mississippi county being overrun with tramps, thieves, robbers, public enemies, money could not be safely kept in said county; and for the purpose of keeping it safely, he deposited it to his credit, as treasurer, in a bank in St. Louis, which failed, whereby the money was wholly lost. Such an answer as this, we think, is insufficient to shield defendant from liability in any view which can be taken of the case. If the obligation assumed by defendant, in his bond, to deliver over to his successor in office all money belonging to the county, can only be met or discharged by making such delivery or payment, it is clear that the facts set up in the answer, and admitted to be true, constitute no defense. That the above rule is the correct one governing in such cases, is established by the following authorities, (approvingly cited by this court in the case of *State ex rel. v. Powell*, 67 Mo. 395,) *U. S. v. Prescott*, 3 How. 578; *U. S. v. Morgan*, 11 How. 154; 4 Wall. 185; 9 Wall. 83; 13 Wall. 17.

If, on the other hand, under the rule laid down in the case of *U. S. v. Thomas*, 15 Wall. 337, defendant is to be regarded as a bailee and exempt from liability to pay when the loss is occasioned by the act of God or a public enemy, he would still be liable under the facts stated in the answer, because they show that the loss was not occasioned in either of these ways. The tramps, thieves and robbers, which it is alleged overran Mississippi county, while they are enemies to the peace and safety of the public and social order, are not public enemies in the legal sense of these words. "By enemies is, to be understood public enemies, with whom the nation is itself at open war; and not merely robbers, thieves and other private depredators, however much they may be deemed in a moral sense at war with society. Losses, therefore, which are occasioned by robbery on the highway, or by the depredations of mobs, riots, insurgents and other felons, are not deemed losses by enemies within the meaning of the exception." Story on Bail., (9 Ed.) § 526; Angell on Carriers, § 200 ; Hutch. on Carriers, §§ 204, 205.

2. "public enemies:" bailment.

Besides this, the facts agreed upon show that defendant made not a special but general deposit of the money to his credit as treasurer. Under the authority of the case of the *State ex. rel. v. Powell*, 67 Mo. 395, by making such deposit "the bank simply became indebted to him in his official capacity, and he took the risk of being able to collect it when he required it." Judgment reversed and cause remanded, to be proceeded with in conformity to this opinion. All the judges concur.

3. county treasurer.